# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR-23-50-GF-BMM-1 |
| Plaintiff, | |
| vs. | ORDER |
| CARLOS MAURICIO MANRIQUE-FRIAS, | |
| Defendant. | |

## INTRODUCTION

A federal grand jury charged Carlos Mauricio Manrique-Frias ("Manrique-Frias") with one count of Transportation of Child Pornography in violation of 18 U.S.C. § 2252(a)(1), one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), and one count of Illegal Entry into the United States in violation of 8 U.S.C. § 1325(a)(1). (Doc. 9 at 2–3.) Manrique-Frias filed a motion to suppress all evidence obtained by U.S. Customs and Border Patrol ("CBP") officers resulting from a search of Manrique-Frias's backpack and phone incident to a pedestrian stop on April 23, 2023. (Doc. 15.) The Government opposes the motion. (Doc. 25.) The Court conducted a hearing on the motion on August 15, 2023. (Doc. 29.)

## FACTUAL AND LEGAL BACKGROUND

CBP Agent Thomas Vines ("Agent Vines") received a report that an off-duty CBP agent had observed a man walking southbound along Highway 16 at about 2:45 p.m. on April 23, 2023. (Doc. 25-1.) CBP Agent Nicholas Buchnowski ("Agent Buchnowski") and Agent Vines drove to the area. *Id.* The agents observed a man walking along Highway 16, approximately 9 miles south of the U.S.-Canada border. (Doc. 25-2.) Agent Buchnowski and Agent Vines pulled over and approached the man. (Doc. 25-1.) The agents discovered upon contact that the man only spoke Spanish. *Id.*

Agent Buchnowski and Agent Vines identified the man as Manrique-Frias from his Mexican passport. *Id.* Agent Vines noted that the passport lacked any visa stamps. *Id.* Agent Buchnowski asked Manrique-Frias if he was illegally in the U.S. (Doc. 25-2.) Manrique-Frias responded that he was not in the U.S. illegally, and he claimed to be working for a nearby ranch. (Doc. 25-2.) Manrique-Frias admitted to being in the U.S. illegally after additional questioning. *Id.* Manrique-Frias had no prior immigration or criminal history. (Doc. 25-3 at 2.) Agent Buchnowski and Agent Vines arrested Manrique-Frias without a warrant around 3:00 p.m. Agent Buchnowski and Agent Vines seized two phones and a backpack from Manrique-Frias. (Doc. 25-2.) The agents transported Manrique-Frias to the Plentywood Border Patrol Station ("Plentywood Station"). *Id.*

CBP officers searched Manrique-Frias's backpack at the Plentywood Station. (Doc. 16 at 3.) The officers found a small amount of marijuana and Manrique-Frias's travel documents from Mexico to Canada in the backpack. *Id.* CBP agents sought consent from Manrique-Frias to search the cell phones in his possession. (Doc. 25-6 at 1.) CBP Agent Tomas Gomez ("Agent Gomez") gave Manrique-Frias a Spanish-language consent form that advised him of his right to withhold consent, his right to withdraw consent, and that any evidence found could be used against him in a criminal trial. (Doc. 25-5 at 1.) Manrique-Frias signed the consent form at 4:35 p.m. *Id.* Agent Gomez determined that the Samsung cell phone was too damaged to analyze. (Doc. 25-6 at 1.) Agent Gomez downloaded the iPhone XR data at 5:30 p.m. *Id.* CBP Agent Seth Kimry ("Agent Kimry") performed a manual search of the iPhone while Agent Gomez analyzed the advanced search data. Agent Kimry discovered suspected child pornography in the iPhone's deleted files at approximately 6:18 p.m. *Id.* at 2.

The CBP officers finally read Manrique-Frias his *Miranda* rights at 6:46 P.M. *Id.* Agent Gomez testified that Manrique-Frias signed an acknowledgement of his rights and signed a waiver of his right to have an attorney present. *Id.* The Government failed to produce these waivers. (Doc. 16 at 4.) The CBP officers conducted a 30-minute interview about 3 hours after having advised Manrique-Frias of his rights. *Id.* at 4–5. Agent Gomez reported that Manrique-Frias admitted to

owning the cell phone. (Doc. 25-6 at 2.) Manrique-Frias claimed that he received the child pornography from a group chat on WhatsApp and immediately blocked the group. (Doc. 25-6 at 3.)

## LEGAL STANDARD

The Fourth Amendment safeguards the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. Evidence proves admissible in federal court if law enforcement's search and seizure has complied with federal constitutional standards. *See United States v. Chavez-Vernaza*, 844 F.2d 1368 (9th Cir. 1987); *Elkins v. United States*, 364 U.S. 206 (1960). A person must have a legitimate expectation of privacy in the area searched to establish standing to challenge that a search was illegal pursuant to the Fourth Amendment. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). The expectation of privacy must prove reasonable. *Minnesota v. Carter*, 525 U.S. 83, 88 (1994).

## DISCUSSION

Manrique-Frias contends that law enforcement lacked reasonable suspicion for the stop, lacked probable cause to arrest him, and violated his Fourth Amendment rights by searching his backpack and phone without a warrant. (Doc. 16 at 1–2.) The Government argues that law enforcement needed no reasonable suspicion for the initial contact because they did not seize Manrique-Frias's person. (Doc. 25 at 2.) The Government further argues that even if there had been a seizure of Manrique-

4

Frias's person, law enforcement officers possessed reasonable suspicion to support the seizure. *Id.* The Government contends that law enforcement possessed probable cause to arrest Manrique-Frias based on his admission that he was in the United States illegally. *Id.* Finally, the Government argues that the agents conducted a valid search of Manrique-Frias's phone based on his consent to the search and the extended border search doctrine. *Id.*

## I. Whether law enforcement's encounter with Manrique-Frias constituted a seizure.

"'[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions.'" *United States v. Brown*, 996 F.3d 998, 1005 (9th Cir. 2021) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). An encounter is consensual "[s]o long as a reasonable person would feel free 'to disregard the police and go about [their] business.'" *Bostick*, 501 U.S. at 434 (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). Consensual encounters do not implicate Fourth Amendment concerns. *Bostick*, 501 U.S. at 434. An encounter proves non-consensual where "police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 439.

Courts consider all the circumstances surrounding an encounter to determine whether it was consensual. *United States v. Kim*, 25 F.3d 1426, 1430 (9th Cir. 1994). The U. S. Supreme Court has considered "the threatening presence of several

officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled" in making this determination. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The Ninth Circuit also has considered the time of day, the place, and the public visibility of the encounter. *Brown*, 996 F.3d at 1005. The Ninth Circuit determined an encounter to be consensual in *Brown* where an officer approached two men sitting in a parking lot in public view in the middle of the day and asked them for identification and about drug activity. *Id.* at 1002–03, 1005–06.

A reasonable person in Manrique-Frias's position would have felt "free 'to disregard the police and go about [their] business.'" *Bostick*, 501 U.S. at 434 (quoting *Hodari D.*, 499 U.S. at 628). Conflicting evidence exists as to where the patrol vehicle stopped relative to Manrique-Frias. Agent Buchnowski testified that Agent Vines pulled up behind Manrique-Frias. Agent Vines testified that he pulled alongside Manrique-Frias. Manrique-Frias testified that the patrol vehicle stopped in front of him, impeding his forward progress.

The Ninth Circuit has determined an encounter to be consensual where a law enforcement officer stopped a pedestrian walking through a mall to ask him about possession of a weapon. *United States v. Orman*, 486 F.3d 1170, 1176 (9th Cir. 2007). The Ninth Circuit noted in *Orman* that the encounter had been brief, the

officer had not been threatening, and the encounter had taken place in a public setting. *Id.* at 1175–76. Manrique-Frias encountered only two CBP officers. The officers did not activate their lights or sirens. The officers never displayed a weapon or physically touched Manrique-Frias in the initial encounter. The encounter occurred on a public highway in the middle of the day. A review of all of the circumstances surrounding the encounter demonstrates that a reasonable person would have felt free to ignore the officers. *Brown*, 996 F.3d at 1005–06. The encounter between Manrique-Frias and the CBP officers proves consensual and did not require reasonable suspicion.

## II.   Whether Agent Vines and Agent Buchnowski had reasonable suspicion to stop Manrique-Frias even if the encounter rose to the level of a seizure.

Law enforcement may stop and detain an individual or vehicle upon reasonable suspicion of criminal activity. *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *United States v. Choudry*, 461 F.3d 1097, 1100 n.2 (9th Cir. 2006). "Reasonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form the basis for particularized suspicion." *United States v. Landeros*, 913 F.3d 862, 868 (9th Cir. 2019) (internal quotation marks omitted). The Court must examine the totality of the circumstances to determine whether law enforcement possessed reasonable suspicion. *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (citing

7

*Arvizu*, 554 U.S. at 273). "In the context of border patrol stops, the totality of the circumstances may include characteristics of the area, proximity to the border, usual patterns of traffic and time of day, previous alien or drug smuggling in the area, behavior of the driver, appearance or behavior of passengers, and the model and appearance of the vehicle." *Valdes-Vega*, 738 F.3d at 1079 (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 884–85 (1975)).

A law enforcement officer's experience provides background to assess relevant facts, but the inferences an officer draws from the facts must be objectively reasonable. *United States v. Montero-Camargo*, 208 F.3d 1122, 1131 (9th Cir. 2000). "'[A]n officer cannot rely solely on generalizations that, if accepted, would cast suspicion on large segments of the lawabiding population'" to establish their reasonable suspicion. *United States v. Raygoza-Garcia*, 902 F.3d 994, 1000 (9th Cir. 2018) (quoting *United States v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir. 2006)).

The Government relies on Manrique-Frias's proximity to the border, the characteristics of the area, previous illegal entry in the area, and Manrique-Frias's behavior as providing reasonable suspicion. The encounter with Manrique-Frias occurred approximately nine miles from the United States – Canadian border. Agent Buchnowski testified that CBP had apprehended three other people for illegal entry in that area in the four months before they apprehended Manrique-Frias. Agent Buchnowski further testified that though three represents a small number, this

8

amount was significant because they had not observed people entering on foot in years.

The area where Manrique-Frias was walking is rural and surrounded by farm and ranch land. Agent Buchnowski testified that it was unusual to have hitchhikers in the area unless they were in distress. Agent Vines testified that it was cold and that there were still a couple feet of snow on the ground when they encountered Manrique-Frias. Agent Buchnowski testified that he observed Manrique-Frias using his phone as the CBP vehicle approached him. Agent Buchnowski indicated that this behavior was significant because in his experience, people who had made an illegal entry often would alert their ride if they saw a marked border patrol unit. Agent Buchnowski's experience consists of fifteen years working for the CBP. Agent Buchnowski further testified that Manrique-Frias did not appear dressed for the weather. Agent Vines stated that Manrique-Frias wore appropriate clothing for the weather conditions. Given these inconsistencies, the Court will not consider Manrique-Frias's clothing in the reasonable suspicion inquiry.

Excluding Manrique-Frias's clothing, the CBP officers observed Manrique-Frias walking in an unpopulated rural area within miles of the border where illegal on-foot entry recently had increased and in weather conditions that a person typically would not walk. Agent Buchnowski testified that he observed Manrique-Frias on his phone. Manrique-Frias argues that using a phone while walking is innocent

behavior. "Even innocent, noncriminal acts can foster reasonable suspicion in the total context." *Valdes-Vega*, 738 F.3d at 1080 (citing *Arvizu*, 534 U.S. at 274). Agent Buchnowski explained that in his experience people who illegally had entered the country often pulled out their phone when they saw a marked border patrol vehicle to alert their ride. These circumstances, when viewed all together, gave rise to reasonable suspicion. *Montero-Camargo*, 208 F.3d at 1139.

### III.   Whether Agent Vines and Agent Buchnowski had probable cause to arrest Manrique-Frias.

A warrantless arrest requires probable cause. *Michigan v. Summers,* 452 U.S. 692, 700 (1981). "[L]aw enforcement officers protecting our border have more leeway than law enforcement officers in other settings with regard to searches and detentions." *United States v. Garcia*, 520 Fed. App'x 507, 508 (9th Cir. 2013). Border patrol officers are not afforded this same leeway when it comes to arrests. "[B]order agents[] need probable cause to make a warrantless arrest of an individual." *United States v. Hernandez*, 322 F.3d 592, 596 (9th Cir. 2002).

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez,* 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio,* 379 U.S. 89, 91 142 (1964)). If a suspected crime involves immigration, law enforcement

must articulate specific facts that show that the suspected violation is criminal rather than civil. *Martinez-Medina v. Holder*, 673 F.3d 1029, 1035–36 (9th Cir. 2011).

A person's admission of illegal presence may be some indication of illegal entry, but without more, it fails to provide probable cause of the criminal violation of illegal entry. *Gonzales v. City of Peoria*, 722 F.2d 468, 476-77 (9th Cir. 1983), overruled on other grounds by *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) (en banc). Illegal presence constitutes only a civil violation. *Martinez-Medina*, 673 F.3d at 1036. "An [individual] may be unlawfully present in the United States without being criminally liable for illegal entry . . . if the [individual] has overstayed a valid visa or otherwise remains in the country after the expiration of a period authorized by the Department of Homeland Security." *Id.* at n.4.

Manrique-Frias contends that CBP officers lacked probable cause to arrest him because the officers failed to articulate more than unlawful presence as a basis for the arrest. (Doc. 16 at 7.) The Government argues that "entering or remaining unlawfully in this country is itself a crime." *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984). The Government mischaracterizes the current Ninth Circuit standard. The Ninth Circuit clarified in *Martinez-Medina* that *Lopez-Mendoza* was not "meant to suggest that an alien's mere unauthorized presence is itself a crime." *Id.* at 1036. "[*Gonzales*'s] holding that an alien's 'admission of illegal presence . . . does not,

without more, provide probable cause of the criminal violation of illegal entry,' always [was], and remain[s], the law of the circuit." *Id.*

Manrique-Frias's admission of illegal presence in the United States, alone, did not provide probable cause for arrest. The CBP officers possessed more facts than Manrique-Frias's admission. The CBP officers encountered Manrique-Frias walking approximately nine miles from the Canadian border in an area where on-foot illegal entries recently had increased. The CBP officers noted that Manrique-Frias was walking along a highway in a rural area where it was unusual to have hitchhikers. The CBP officers further testified that it was cold and there was snow on the ground. Agent Buchnowski observed Manrique-Frias's phone use and considered it an indicator of a possible illegal entry based on his experience. Manrique-Frias further produced a Mexican passport that showed no visa stamps. Manrique-Frias told the CBP officers that he was working at a nearby ranch and had left his immigration documents there. Agent Buchnowski testified that he knew most of the ranchers in the area and did not believe any of the ranchers would hire someone with whom they could not communicate in English. These circumstances coupled with Manrique-Frias's admission of illegal presence in the United States provided "information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Lopez,* 482 F.3d at 1072.

12

### IV.   Whether an exception to the Fourth Amendment warrant requirement justified the search of Manrique-Frias's backpack.

Manrique-Frias contends that no exception to the Fourth Amendment justified a warrantless search of his backpack. Manrique-Frias accordingly argues that the search violated his rights against unreasonable searches. The Government argues that the search incident to arrest exception justified the search along with the inventory search exception and the extended border search doctrine.

#### a.  Search Incident to Arrest

A search incident to a lawful arrest represents an exception to the Fourth Amendment's warrant requirement. *United States v. Cook*, 808 F.3d 1195, 1199 (9th Cir. 2015). The exception permits an officer to search "the arrestee's person and the area 'within his immediate control.'" *Cook*, 808 F.3d at 1199 (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). "The search must be 'spatially and temporally incident to the arrest.'" *Id.* (quoting *United States v. Camou*, 773 F.3d 932, 937 (9th Cir. 2014)). "[T]he focus is 'upon whether the arrest and search are so separated in time or by intervening acts that the latter cannot be said to have been incident to the former.'" *Camou*, 773 F.3d at 938 (quoting *United States v. Smith*, 389 F.3d 994, 951 (9th 2004)).

The Ninth Circuit has recognized a lack of temporal proximity where the law enforcement officers searched an arrestee's purse at their immigration office more than an hour after arresting her for being in the country illegally. *United States v.*

*Monclavo-Cruz*, 662 F.2d 1285, 1286, 1288 (9th Cir. 1981). The CBP officers did not search Manrique-Frias's backpack at the time of the arrest. Agent Vines testified that they placed Manrique-Frias's backpack in a locked compartment after his arrest. Agent Buchnowski testified that the officers only asked what the backpack contained and then secured it in the patrol vehicle. The search of the backpack cannot be justified by the search incident to arrest exception when the search had not been temporally incident to the arrest. *Monclavo-Cruz*, 662 F.2d at 1287–88.

### b. Inventory Search

Inventory searches provide another exception to the Fourth Amendment's warrant requirement. *United States v. Montano*, CR-18-123-BLG-SPW-1, 2020 U.S. Dist. LEXIS 5588, at *5 (D. Mont. 2020). "[A]n inventory search must conform to a standardized and established local procedure, and must be motivated by a 'concern to inventory the items rather than to search for other incriminating evidence.'" *United States v. Bowhay*, 992 F.2d 229, 230 (9th Cir. 1993) (quoting *United States v. Feldman*, 788 F.2d 544, 550 (9th Cir. 1986)). The Ninth Circuit has recognized a valid inventory search where a border patrol agent searched the contents of an arrestee's duffel bag at the station. *United States v. Cervantes-Gaitan*, 792 F.2d 770, 772 (9th Cir. 1986). The border patrol agent in *Cervantes-Gaitan* testified that their standard procedure involved inventorying the belongings of arrestees and providing an inventory list for any money found but not other property. *Id.*

CBP officers lawfully arrested Manrique-Frias, as determined above, and took him to the Plentywood Station for processing. The CBP officers took the items that were in his possession at the time of the arrest to the Plentywood Station. Agent Buchnowski testified that the agents followed their standard process. Agent Buchnowski testified that CBP officers separate an arrestee's belongings and conduct an inventory and remove anything that would threaten officer safety. Agent Vines testified that they inventory the belongings of arrestees, count out any money and return it to the arrestee, and secure the rest of the belongings in a property bag. Agent Vines testified that CBP agents inventoried the backpack at the station and issued a property ticket. The search of the backpack conformed with the CBP's standardized procedure following an arrest and processing for unlawful presence. The inventory search exception to the Fourth Amendment justified the search of the backpack. *Cervantes-Gaitan*, 792 F.2d at 772–73.

### c. Border Search

"The border search doctrine is a partial exception to the Fourth Amendment's limitations on searches and seizures." *Guzman-Padilla*, 573 F.3d at 877 (citing *United States v. Ramsey*, 431 U.S. 606, 616–19 (1979).  Border searches may take place at an "extended" border. *United States v. Cardona,* 769 F.2d 625, 628 (9th Cir.1985). Extended border searches occur at a greater spatial and temporal distance from the border. *Id.* These searches "intrude more on an individual's normal

expectation of privacy" and "must be justified by 'reasonable suspicion' that the subject of the search was involved in criminal activity." *United States v. Alfonso,* 759 F.2d 728, 734 (9th Cir. 1985). An extended border search also requires that law enforcement possess a "reasonable certainty" that a border has been crossed. *Guzman-Padilla*, 573 F.3d at 878 (citing *United States v. Sahanaja,* 430 F.3d 1049, 1053–54 (9th Cir. 2005)).

Courts determine whether reasonable certainty of a border crossing exists "by examining 'the totality of the surrounding circumstances, including the time and distance elapsed from the border as well as the manner and extent of surveillance.'" *Guzman-Padilla*, 573 F.3d at 879 (citing *Alexander v. United States*, 363 F.2d 379, 382 (9th Cir. 1966)). Reasonable certainty involves a higher standard than probable cause. *Id.* at 880. Reasonable certainty does not require that law enforcement observe the border crossing or that there had been continued surveillance of the subject. *Id.* Reasonable certainty requires that "the totality of the facts and circumstances within the officers' knowledge and of which they have *reasonably trustworthy information* [must] be sufficient *in the light of their experience* to warrant a firm belief that a border crossing has occurred." *Id.* (quoting *Tilton*, 534 F.2d 1363, 1366-67 (9th Cir. 1976)) (internal quotation marks omitted).

The Ninth Circuit determined that law enforcement lacked reasonable certainty that contraband found in a vehicle had been in the vehicle when it crossed

the border where the officers lost sight of the vehicle for ten minutes after it crossed the border. *Guzman-Padilla*, 573 P.3d at 880 (citing *United States v. Peterson*, 473 F.2d 874, 876 (9th Cir. 1973)). The Ninth Circuit also determined that law enforcement lacked reasonable certainty where law enforcement did not see the vehicle until it was in a busy border town three miles from the border. *United States v. Perez*, 644 F.2d 1299, 1302 (9th Cir. 1981). In *United States v. Neil*, the Court recognized that law enforcement had reasonable certainty of a border crossing where, before the search, they had obtained images of people near the border and crossing the border fence. *United States v. Neil*, CR-21-07-M-DWM, 2021 U.S. Dist. LEXIS 73072, at *14–15 (D. Mont. 2021). The law enforcement officers also had noted that the vehicle was on the only road that provided unimpeded access from that point of entry, that there had been previous smuggling in the area, and that the vehicle had fogged windows that proved consistent with people entering the vehicle wearing cold, wet clothing. *Id.*

The CBP officers lacked reasonable certainty that a border had been crossed when they searched Manrique-Frias's personal belongings. The Government argues that the CBP officers had reasonable certainty because Manrique-Frias admitted to being in the United States illegally, was walking near the Canadian border on an isolated and snowy highway in an area where illegal entries had increased, and could not identify the ranch where he claimed to be working. These facts support probable

17

cause that an illegal entry had occurred, but fall short of the reasonable certainty required. Unlike in *Neil*, the CBP officers had not yet received the picture from the Canadian border game camera, and they had not found the selfie that Manrique-Frias took near the border. "Government agents will not be allowed to justify an extended border search with information which was not available to the agents at the time of the search." *Perez*, 644 F.2d at 1302 (citing *United States v. Ramos*, 473 F. Supp. 1109, 1111 (S.D. Fla. 1979)).

The CBP officers had not questioned Manrique-Frias about his travel plans. The CBP officers knew that Manrique-Frias's Mexican passport did not have visa stamps, but his criminal history and immigration history returned clear. The CBP officers had not followed the tracks in the snow to trace from where Manrique-Frias had come. The CBP officers had not received any reports from Canadian authorities. Like in *Perez*, they did not observe Manrique-Frias until he was several miles from the border. The CBP officers lacked reasonable certainty of a border crossing under these circumstances. The extended border search doctrine fails to provide an additional justification to search Manrique-Frias's backpack.   As discussed previously, however, the officers lawfully searched Manrique-Frias's backpack as an inventory search.

### V. Whether an exception to the Fourth Amendment warrant requirement justified the search of Manrique-Frias's phone.

Manrique-Frias argues that the search of his cell phone violated his right against unreasonable searches. (Doc. 16 at 9–13.) The Government contends that Manrique-Frias consented to the search. (Doc. 25 at 12–14.) Alternatively, the Government contends that the extended border search doctrine justified the search. (*Id.* at 14–18.)

#### a. Consent

The Government bears the burden to demonstrate that a defendant voluntarily consented to a search. *United States v. Kim*, 25 F.3d 1426 (9th Cir. 1994). Courts evaluate voluntariness based on the totality of circumstances. *United States v. Alfonso*, 759 F.2d 728, 740 (9th Cir. 1985). The Ninth Circuit has outlined five non-exclusive factors for determining whether a consent to search had been voluntary. *United States v. Taylor*, 60 F.4th 1233, 1243 (9th Cir. 2023). These factors include: (1) whether the person subjected to the search was in custody; (2) whether the arresting officers had their guns drawn; (3) whether law enforcement gave *Miranda* warnings before the search; (4) whether law enforcement notified the person that they had a right to refuse to consent to the search; and (5) whether law enforcement claimed that they could obtain a search warrant. *Id.*

Agent Vines and Agent Buchnowski took Manrique-Frias into custody and transported him to the Plentywood Station at approximately 3:15 p.m. Manrique-Frias signed the consent form at 4:35 p.m. The eighty minutes that Manrique-Frias

spent in custody before signing the consent form weighs against a finding of voluntariness. The CBP officers were armed, arrested Manrique-Frias without a warrant, removed his belongings from his person, and transported him to the Plentywood Station. These facts provide limited evidence of law enforcement overmastering Manrique-Frias. Manrique-Frias admitted, however, that the CBP officers did not have their guns drawn. This factor does not weigh strongly in one direction or the other.

The CBP officers failed to provide *Miranda* warnings before the search. This factor weighs against a finding of voluntariness. The Spanish-language consent form that Manrique-Frias signed informed him of a right to withhold his consent to the search. This factor weighs in favor of a finding of voluntariness. Finally, the parties presented conflicting testimony about whether law enforcement claimed that they could obtain a search warrant if Manrique-Frias refused to provide consent.

The Government relates this case to *United States v. Warwick* and argues that the hour and a half long detention before Manrique-Frias signed the consent form does not render the consent involuntary. (Doc. 25 at 13.) This argument ignores the other factors present in *Warwick*. Law enforcement in *Warwick* went through the consent form with the detainee line by line and explained his ability to limit or end the search at any time. *Id.*, 928 F.3d 939, 945 (9th Cir. 2019). Warwick further signed the consent form while waiting outside his house. *Id.* at 946.

Unlike the familiar environment in *Warwick*, the CBP officers transported Manrique-Frias to a border patrol station, placed him in a processing cell, and never explained what charges he would be facing or if he would be released. In considering the totality of the circumstances, the Government has failed to meet their burden to demonstrate that Manrique-Frias voluntarily consented to the search. *United States v. Rothman*, 492 F.2d 1260, 1265 (9th Cir. 1973). "Moreover, this is not a case in which a consent search was necessary or proper . . . the officers had ample time to get a warrant." *Id.* (citing *Johnson v. United States*, 333 U.S. 10, 15 (1948)). Manrique-Frias's alleged consent and the circumstances under which he gave it fail to support the warrantless search of his cellphone.

### b.  Extended Border Search Doctrine

The Government correctly characterizes the Ninth Circuit standard for border searches of cell phones. "[M]anual searches of cell phones at the border are reasonable without individualized suspicion, whereas the forensic examination of a cell phone requires a showing of reasonable suspicion." *United States v. Cano*, 934 F.3d 1002, 1016 (9th Cir. 2019) (citing *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013)). Law enforcement did not search Manrique-Frias's phone at the border. Law enforcement further lacked reasonable certainty that Manrique-Frias or his phone had crossed the border. The extended border search doctrine does not apply. *See Peterson*, 473 F.2d at 876; *Perez*, 644 F.2d at 1302. The extended border

search doctrine fails to justify the search of Manrique-Frias's phone. The warrantless search violated Manrique-Frias's right against unreasonable searches.

## VI.    Whether the exclusionary rule requires suppression of Manrique-Frias's statements.

The exclusionary rule applies both to direct and indirect products of an illegal search. *United States v. Ladum,* 141 F.3d 1328, 1336–37 (9th Cir. 1998). Indirect products must bear a sufficiently close relationship to the search's underlying illegality. *Id.* Manrique-Frias's admissions made after the phone search constitute a direct response to the CBP officer's illegal phone search. These statements must be suppressed.

## CONCLUSION

The Court will deny, in part, and grant, in part, Manrique-Frias's Motion to Suppress (Doc. 15.) The initial contact between CBP officers and Manrique-Frias did not constitute a stop that required particularized suspicion. Even had the initial contact constituted a stop, the Government has demonstrated that the CBP officers possessed reasonable suspicion. The Government also has demonstrated that the CBP officers possessed probable cause for the arrest of Manrique-Frias. The inventory search exception to the Fourth Amendment justified the search of Manrique-Frias's backpack. The Government has failed to demonstrate that the

consent exception or extended border search exception justified the warrantless search of Manrique-Frias's phone.

**ORDER**

Accordingly, **IT IS ORDERED** that Manrique-Frias's Motion to Suppress (Doc. 15):

1.) is **DENIED** to the extent that it seeks suppression of the search of Manrique-Frias's backpack**.**

2.) is **GRANTED** to the extent that it seeks suppression of the search of Manrique-Frias's cell phone**.**

3.) is **GRANTED** to the extent that it seeks suppression of the statements made by Manrique-Frias after the search of his cell phone.

DATED this 18th day of September, 2023.

_____
Brian Morris, Chief District Judge
United States District Court